# Illinois Official Reports

## Appellate Court

---

### *Foust v. Forest Preserve District*, 2016 IL App (1st) 160873

---

| | |
|---|---|
| Appellate Court Caption | JOE FOUST, as Administrator of the Estate of Molly Anne Glynn, Deceased, Plaintiff-Appellee and Cross-Appellant, v. THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Defendant-Appellant and Cross-Appellee. |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-16-0873, 1-16-0874 cons. |
| Filed<br>Rehearing denied | September 30, 2016<br>November 18, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-L-011513; the Hon. William E. Gomolinski, Judge, presiding. |
| Judgment | Certified questions answered. |
| Counsel on Appeal | Robert L. Baker, of Forest Preserve District of Cook County, of Chicago, for appellant.<br><br>Debra I. Crystal, of Chicago, and Joseph A. Terc, of Arlington Heights, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Hall and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1     The instant consolidated interlocutory appeals arise from plaintiff's lawsuit against defendant, the Forest Preserve District of Cook County, after the death of Molly Anne Glynn, a woman who was killed when she was struck by a tree limb while riding her bicycle on one of defendant's paved bicycle paths. After defendant filed a motion to dismiss based on immunity under four sections of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2012)), the trial court found that defendant was immune from liability for its negligent conduct under one section, but that it was not immune under the other three sections. The trial court certified two questions concerning immunity for review pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015), and each party filed a petition for leave to appeal concerning one of the two questions. We allowed both petitions for leave to appeal and consolidated the two appeals. For the reasons that follow, we now answer the trial court's first certified question in the affirmative and the second certified question in the negative.

¶ 2                                    BACKGROUND
¶ 3                                    I. Complaint
¶ 4     On February 17, 2015, plaintiff filed a four-count amended complaint against defendant, alleging that on September 5, 2014, decedent Molly Anne Glynn was riding her bicycle through Erickson Woods[1] on a bicycle path owned and maintained by defendant. According to the complaint, "[o]n September 5, 2014, and for a long time prior thereto, there existed trees, shrubs and other vegetation in close proximity to the edges of the bike path." While decedent was operating her bicycle, "a large section of diseased, defective and weakened tree broke off[,] crashing towards the ground and striking" decedent, who died the next day from her injuries.

¶ 5     Count I of the complaint was a survival action for negligence and alleged that defendant was negligent in (1) failing to adequately inspect the trees, shrubs, and vegetation along the bicycle path "when it knew or should have known that some of the trees, shrubs or vegetation presented a risk to persons using the bike path"; (2) failing to inspect the trees, shrubs, and vegetation for signs of disease or other weakened conditions "that could result in trees or portions of trees, shrubs or vegetations falling onto the bike path"; (3) failing to prune, trim, or remove diseased or otherwise weakened trees, shrubs, or vegetation or parts thereof "that were located adjacent to and in close proximity to the bike path"; (4) failing to maintain the property free from unreasonable risks to persons using the bicycle path; (5) disregarding notice of deceased or otherwise weakened trees, shrubs, or vegetation or parts thereof "that were located adjacent to and in close proximity to the bike path"; (6) failing to properly inspect or maintain trees, shrubs, or vegetation after receiving notice of the dangerous conditions of the trees, shrubs, or vegetation "near the bike path"; (7) failing to provide a safe means of ingress and egress from the bicycle path; (8) failing to give adequate warning to users of the bicycle path despite having notice of the presence of trees, shrubs, and vegetation that were diseased or

---

[1]The complaint describes Erickson Woods as "a forest preserve grove which was located in Cook County between Tower Road on the north, Willow Road on the south and on the east side of the Edens Expressway."

weakened; and (9) failing to barricade or otherwise prevent the use of the bicycle path in the area where trees, shrubs, and vegetation were diseased or weakened despite having notice of the presence of such trees, shrubs, or vegetation. Count I alleged that as a result of such negligent acts, decedent "was struck by a tree, shrub or vegetation or a limb or part thereof that was located adjacent to and in close proximity to the bike path causing her to suffer injuries and damages including conscious pain and suffering prior to her death on September 6, 2014."

¶ 6 Count II was a wrongful death action for negligence and contained similar allegations as count I, except that it alleged that decedent left her husband (the administrator of her estate and the plaintiff in the instant case) and her two children as her survivors.

¶ 7 Count III was a survival action alleging willful and wanton conduct on the part of defendant. Count III included similar allegations to counts I and II, except it added allegations that defendant had inspected the trees, shrubs, and vegetation along the bicycle path in Erickson Woods, including the tree that struck decedent, and knew that there were trees, shrubs, or other vegetation that were diseased or otherwise weakened and presented a risk of harm to persons using the bicycle path and placed "X's" on those trees. Count III alleged that defendant's inspection included all of the trees, shrubs, and other vegetation in the area within 50 feet of the place where decedent was injured. Count III enumerated the same problems with defendant's conduct as in counts I and II, except that count III alleged that defendant engaged in its conduct "[w]ith an utter indifference and a conscious disregard for the safety of the public and Molly Anne Glynn."

¶ 8 Finally, count IV was a wrongful death action alleging willful and wanton conduct on the part of defendant. Count IV was similar to count III, except it alleged that decedent left her husband and her two children as her survivors.

¶ 9                                            II. Motion to Dismiss

¶ 10 On March 10, 2015, defendant filed a motion to dismiss the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)), arguing that defendant was immune from liability pursuant to sections 3-107(b), 2-201, 3-104, and 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-107(b), 2-201, 3-104, 3-106 (West 2012)). Only immunity pursuant to sections 3-107(b) and 3-106 are at issue on the instant appeal, so we relate the parties' arguments concerning only those sections.

¶ 11 With respect to section 3-107(b), which provides immunity for an injury caused by a condition of "[a]ny hiking, riding, fishing or hunting trail" (745 ILCS 10/3-107(b) (West 2012)), defendant argued that "plaintiff's Amended Complaint is solely and unambiguously based upon the condition of the Trail, namely the presence of weakened trees along the Trail." Defendant further argued that the character of the trail established it as a "riding trail" under section 3-107(b). Accordingly, defendant argued that the section 3-107(b) immunity applied.

¶ 12 With respect to section 3-106, which provides immunity for ordinary negligence claims[2] "where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities" (745 ILCS 10/3-106 (West

_____

[2]The section 3-106 immunity does not extend to claims of injury based on willful and wanton conduct. 745 ILCS 10/3-106 (West 2012).

- 3 -

2012)), defendant argued that counts I and II should be dismissed because the trail was intended and permitted to be used for recreational purposes.

¶ 13 Attached to defendant's motion to dismiss was the affidavit of John McCabe, the director of defendant's department of resource management and a certified arborist. McCabe identified the bicycle path in question as defendant's North Branch Paved Trail, which was open to the public daily from dawn until dusk for hiking, jogging, dog walking, cross country skiing, inline skating, and bicycling, as well as providing access to natural areas for fishing, canoeing, and bird watching. McCabe stated that the trail extended from Dundee Road on the north to Devon Avenue on the south, a total distance of approximately 20 miles, and wound through forested areas, the Skokie Lagoons, and along the north branch of the Chicago River. McCabe indicated that defendant's statutory mission was to acquire and hold lands " 'for the purpose of protecting and preserving the flora, fauna, and scenic beauties within such district *** as nearly as may be, in their natural state and condition, for the purpose of the education, pleasure, and recreation of the public' " (quoting 70 ILCS 810/7 (West 2012)), and that in managing the "flora, fauna, and scenic beauties of the District," defendant exercised its discretion in deciding how to best manage those resources "consistent with its statutory mission and in a fiscally responsible manner." McCabe stated that "[t]here is no regulation or legal authority which mandates or prescribes the manner of tree inspection, pruning or removal for property like the District."

¶ 14 In his response to defendant's motion to dismiss, plaintiff argued that section 3-107(b) immunity was not applicable because the tree at issue was adjacent to the trail and was therefore not a "condition of the trail" itself, as required for immunity under the section. Plaintiff further argued that section 3-106 immunity did not apply because the tree in question was located 7½ feet from the trail in a thickly forested area where recreation was not intended or permitted.

¶ 15 Attached to plaintiff's response was the affidavit of D. Logan Nelson, a registered consulting arborist, who stated that the black locust tree that struck the decedent was growing in a "naturalized, non-recreational, woodland setting" and that the crown of the tree forked into two large limbs, one growing straight up and one that was overhanging the trail. Nelson opined that, based on her assessment of the tree, "there were obvious structural defects that, when assessed for tree failure probability, the conclusions would be that branch failure would be imminent." Nelson opined that the "structural defects" of the tree "include[d] a combination of compounding stresses that made tree failure imminent: the black locust species is prone to breakage, the architecture of the heavy and over-reaching branch overhanging the trail was poor, and the branch union of the subject tree trunk and the branch that hit Molly Glynn was seriously compromised and weakened by included bark and decay." Nelson further opined that "the consequences of the impact to target should have been assessed as great and valuable. The compounding combination of the location of the subject locust, the architecture of the long and heavy branch extending across the width of a paved and inviting path to frequent users (i.e. walkers, joggers, roller bladers, bicyclists, etc.) establishes that if branch failure occurred, the target below would be the paved path and perhaps pedestrians who frequently use the subject trail." Nelson opined that "[b]ased upon the standards criteria and accepted practices, the subject black locust presented an immediate hazard and should have been removed within twenty-four hours; as it constituted a hazard, the tree was already marked as such, hence there was no option for discretion with regards to eliminating the hazard."

- 4 -

¶ 16        Defendant filed a reply, again arguing that defendant was immune from liability. Attached to its reply was a transcript from the discovery deposition[3] of McCabe, the director of defendant's department of resource management. In his deposition, McCabe testified that a tree that was seven and a half feet from a paved trail would have an effect on the trail in a few ways: by providing shade to the trail, by "look[ing] nice" from an aesthetic perspective, and by serving as a habitat for animals and birds. McCabe acknowledged that these aspects might not affect whether someone was physically able to use the trail, but testified that they would "probably [affect] why they are going up or down the trail." McCabe further testified that shade could affect someone's physical use of the trail in that "they could be riding along, and all of a sudden it's shady and then all of a sudden it's very bright, and they may not be able to see very clearly and might go off the trail and hit a tree"; McCabe gave an additional example of the sun or shade affecting how quickly the trail dried after it rained, making some areas of the trail more slippery than others. McCabe further testified that other effects that trees could have on trails would be leaves blowing off trees, branches or limbs falling, or berries, nuts, or seeds falling from the trees.

¶ 17        McCabe testified that the tree that struck the decedent was marked by defendant for removal for two reasons. The main reason was the tree's "architecture, or what we call growth form of the tree," and the secondary reason was the fact that it was a black locust tree, a species of tree that was a "lower value tree" that would have been "just easier to remove the whole tree, rather than have the tree pruned." As to the tree's architecture, McCabe explained that "from the way that the tree was growing, the vast majority of the crown[4] of the tree was growing out over the trail[.] *** [T]he tree is not going to *** straighten itself out. The crown continues to grow. Over the years, that crown is only going to get heavier, and it could create issues with bikers being able to get under the tree, or ultimately causing the tree to potentially fail." The tree was marked in approximately mid-August 2014.

¶ 18                                        III. Trial Court Order

¶ 19        On December 16, 2015, the trial court denied defendant's motion to dismiss as to sections 3-107(b), 2-201, and 3-104 of the Tort Immunity Act. However, the trial court granted the motion to dismiss as to section 3-106 of the Tort Immunity Act, which applied to only counts I and II of the complaint, which concerned negligence, and did not affect counts III and IV, which concerned willful and wanton conduct. With respect to section 3-106, the court found that "[t]his is definitely recreational use. It's in such close proximity to that path that people can look at it; they can see it; they can appreciate it. They can do what they want to do with it and enjoy the beauty and the nature part of it. If that's not recreational, I don't know what would be."

¶ 20        On January 15, 2016, plaintiff filed a motion to reconsider the court's dismissal of counts I and II of the complaint, which was denied on March 8, 2016. During the hearing on the motion

---

[3]The parties engaged in limited discovery solely concerning the issues raised in the motion to dismiss.

[4]McCabe explained that "[t]he crown of the tree entails the top part of the tree, the branching structure[.] *** [F]rom an arborist's perspective, when you refer to the crown of the tree, you're generally talking about the bowl of the tree, you know, the majority of the limbs and leaders of the particular tree."

to reconsider, the trial court noted that, with respect to section 3-106, "the path was used for recreational purposes, and this tree abutted the path and hung over the path and it became part of the path." On the same day, the trial court entered an order certifying the following two questions of law:

"1) Does a tree whose base is located about seven feet from the edge of a forest preserve bicycle path, and that has a limb overhanging the approximate width of the path which breaks off and falls onto a cyclist on the path, constitute a condition of property intended or permitted to be used for recreational purposes pursuant to Section 3-106 of the Tort Immunity Act?

2) Does a tree whose base is located about seven feet from the edge of a forest preserve bicycle path, and that has a limb overhanging the approximate width of the path which breaks off and falls onto a cyclist on the path, constitute a condition of a trail pursuant to Section 3-107(b) of the Tort Immunity Act?"

¶ 21    Defendant filed a petition for leave to appeal the second certified question pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015), and plaintiff filed a separate petition for leave to appeal the first certified question. We allowed both appeals and consolidated them on June 20, 2016.

¶ 22                                                    ANALYSIS

¶ 23    Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015) provides a remedy of permissive appeal from interlocutory orders where the trial court has deemed that they involve a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation. We apply a *de novo* standard of review to legal questions presented in an interlocutory appeal brought pursuant to Rule 308. *Simmons v. Homatas*, 236 Ill. 2d 459, 466 (2010). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). On appeal, we are asked to consider two questions, both concerning whether defendant is immune from liability for the decedent's death.

¶ 24    "[L]ocal public entities, in general, have a duty to exercise ordinary care to maintain public property in a reasonably safe condition." *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377 (1995). This duty has been codified in section 3-102 of the Tort Immunity Act, which provides that "a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2012). Section 3-102 did not create a new duty but codified a duty that existed at common law; "[t]he legislature created no new duties when it enacted the Tort Immunity Act." *Bubb*, 167 Ill. 2d at 378. Instead, in enacting the Tort Immunity Act, the legislature "created only immunities and defenses." *Bubb*, 167 Ill. 2d at 378. In providing such immunities and defenses, "the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims." *Bubb*, 167 Ill. 2d at 378. It is two of those immunities that we consider on

appeal.

I. Section 3-106

¶ 26    The first question certified by the trial court asks whether "a tree whose base is located about seven feet from the edge of a forest preserve bicycle path, and that has a limb overhanging the approximate width of the path which breaks off and falls onto a cyclist on the path, constitute a condition of property intended or permitted to be used for recreational purposes pursuant to Section 3-106 of the Tort Immunity Act?"

¶ 27    Under section 3-106 of the Tort Immunity Act, "[n]either a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2012).

¶ 28    The parties do not dispute that the path itself, which the decedent was using at the time the tree limb struck her, constitutes recreational property. However, plaintiff argues that the tree from which the limb fell was located on property that was not intended or permitted to be used for recreational purposes, making the section 3-106 immunity inapplicable. By contrast, defendant argues both (1) that defendant's property as a whole was intended or permitted for recreational use, including the area in which the tree was located and (2) that the tree was a condition of the path, which was undisputedly recreational property. We note that the question of whether the tree was a condition of the path itself is the primary focus of the second certified question on appeal, and we will, accordingly, analyze that issue in depth below.[5] We therefore focus our analysis on the question of whether defendant is entitled to section 3-106 immunity if the tree is *not* considered to be a condition of the path.

¶ 29                                A. Supreme Court Case Law

¶ 30    Our supreme court has spoken several times on the issue of immunity under section 3-106 of the Tort Immunity Act. In *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377 (1995), the supreme court for the first time analyzed the meaning of " 'public property intended or permitted to be used for recreational purposes' " (quoting Ill. Rev. Stat. 1989, ch. 85, ¶ 3-106) under section 3-106 when it considered whether a school district was immune from liability when a child was injured on a sidewalk surrounding a school building that was adjacent to an area that the schoolchildren used as a playground. The court discussed appellate court opinions that had construed this language and agreed with those courts that had concluded that it was "the character of the property in question, not the activity performed at any given time" that determined whether immunity applied. *Bubb*, 167 Ill. 2d at 379. Such a determination "should be based on a case-by-case examination of the nature of the property and its past use." *Bubb*, 167 Ill. 2d at 384.

¶ 31    In reversing the appellate court, the supreme court determined that the appellate court's concerns about expansive interpretation of section 3-106 were unfounded, noting that it "[did] not believe that section 3-106 applies to any public area where recreation might occur. The

---

[5]As defendant points out, if we determine that the tree was, in fact, a condition of the path, section 3-106 immunity would apply, as the path is undisputedly recreational property.

statute contains a specific list of recreational property to which the statute applies. This list suggests that the statute applies to recreational property that is similar in nature to that contained in the statute." *Bubb*, 167 Ill. 2d at 381. The court further noted that "at some point, the use of public property for recreation may be so incidental that section 3-106 does not apply." *Bubb*, 167 Ill. 2d at 382. Nevertheless, the supreme court found that the property at issue in the case before it was recreational, as the facts demonstrated that the school intended for children to use the property as part of the school playground. *Bubb*, 167 Ill. 2d at 382. The court acknowledged that the primary purpose of the property may not have been recreational but noted that "[p]ublic property may have more than one intended use" (*Bubb*, 167 Ill. 2d at 383) and later again stated that "[t]he statute applies if public property is intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property" (*Bubb*, 167 Ill. 2d at 384).

¶ 32      Two years later, the supreme court expanded the interpretation of section 3-106 in *Sylvester v. Chicago Park District*, 179 Ill. 2d 500 (1997), when it found that the defendant park district was immune from liability when the plaintiff was injured after tripping on a "car stop" located on a walkway adjacent to a Soldier Field parking lot on her way to attend a Chicago Bears football game. In its analysis, the supreme court reiterated the *Bubb* court's holding that section 3-106 applied if public property was intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property. *Sylvester*, 179 Ill. 2d at 508 (citing *Bubb*, 167 Ill. 2d at 384). However, the *Sylvester* court then stated that, "[i]n addition, section 3-106 may apply to facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes. These facilities or structures need not be recreational in character for section 3-106 to apply." *Sylvester*, 179 Ill. 2d at 508. The court found that "[a]lthough the walkways and parking lots adjacent to Soldier Field may not be primarily recreational, Soldier Field itself is certainly recreational and these facilities increase its usefulness. Taken as a whole, we find that Soldier Field and its adjacent walkways and parking lots are intended or permitted to be used for recreational purposes." *Sylvester*, 179 Ill. 2d at 508. The court noted that section 3-106 had been amended in 1986 to expand the scope of immunity, and "[t]hus, under section 3-106 as amended, it is the character of the property as a whole that determines whether immunity applies." *Sylvester*, 179 Ill. 2d at 509. The court found that "an examination of the property as a whole indicates that the parking lot in which plaintiff fell was an integral part of the Soldier Field recreational facility. We, therefore, believe that the trial judge erred in narrowly focusing on only whether the parking lot by itself was being used for recreational purposes." *Sylvester*, 179 Ill. 2d at 509-10.

¶ 33      Most recently,[6] in *Rexroad v. City of Springfield*, 207 Ill. 2d 33 (2003), the supreme court distinguished *Sylvester* from the situation present in *Rexroad*, where a student was injured in a parking lot that served the entire school, as well as the school's football field, which was being used during summer practice sessions. The *Rexroad* court found *Sylvester* distinguishable because "Soldier Field's adjacent parking lots and walkways served to benefit Soldier Field only and thus increased the usefulness of the stadium. Here, in contrast, the high school

---

[6]We note that the supreme court discussed section 3-106 again in 2012, in *Moore v. Chicago Park District*, 2012 IL 112788. However, that case involved the interpretation of the section 3-106 immunity for " 'a condition of any public property' " (*Moore*, 2012 IL 112788, ¶ 1), and not the question of whether property is recreational.

parking lot provided access to several different areas of the school not used for recreational purposes. The parking lot in question is different from the parking lot in *Sylvester* and a different analysis applies." *Rexroad*, 207 Ill. 2d at 41-42. The *Rexroad* court determined that the situation present was more analogous to *Bubb*, where the court had recognized that the use of public property for recreation may be so incidental that section 3-106 did not apply. *Rexroad*, 207 Ill. 2d at 43. The court found that "any recreational use of the parking lot in question was so incidental that section 3-106 does not apply. The parking lot served the entire school and only incidentally the football practice field. Moreover, the record does not indicate that the lot had been used for recreation prior to the date of the incident or that recreation had ever been encouraged there." *Rexroad*, 207 Ill. 2d at 43. Thus, the court concluded that the section 3-106 immunity did not apply, noting that "[i]f we were to accept defendants' argument, we would be effectively immunizing large amounts of otherwise nonrecreational school property simply because it is located near recreational school property" and the school would, accordingly, owe no duty of reasonable care to students parking their vehicles and walking to their classes, which the court found the General Assembly could not have intended. *Rexroad*, 207 Ill. 2d at 43.

¶ 34                              B. Application of Section 3-106

¶ 35        In considering whether section 3-106 immunized defendant in the case at bar, plaintiff argues that the area in which the tree that struck the decedent was located was not intended or permitted to be used for recreational purposes. As an initial matter, plaintiff repeatedly claims that we have previously held that only 10% of defendant's property was used for recreational purposes, citing *Belton v. Forest Preserve District*, 407 Ill. App. 3d 409 (2011). While plaintiff does not provide a precise citation for his claim, our review of *Belton* indicates that the only reference to the 10% figure cited by plaintiff was the *Belton* court's statement in its recitation of the facts that two of defendant's employees had testified in discovery depositions that "[o]nly about 10% of the District's property holdings were for recreational use, such as picnicking, and in the other areas the District normally adhered to its statutory mission to preserve, protect, and restore natural areas by allowing vegetation to remain undisturbed as a habitat for fungi, birds, and insects." *Belton*, 407 Ill. App. 3d at 411. This figure is not repeated or alluded to anywhere in the court's analysis. Thus, plaintiff's claim that we "must take judicial notice of that finding" is not persuasive.[7]

¶ 36        We also are not persuaded by plaintiff's extremely narrow view of the "area" involved in the case at bar. Plaintiff argues that the tree was "in a thick wooded, forested area" that was not intended or permitted to be used for recreational purposes, pointing to photographs that he

---

[7]We also agree with defendant that *Belton* is distinguishable on the merits, despite plaintiff's contention that the case was "remarkably similar" to the case at bar, because the plaintiff in that case was not on the defendant's property at the time he was struck by a tree and the court found his status as a nonuser of the defendant's property to be dispositive. *Belton*, 407 Ill. App. 3d at 424-25 ("Because this statute concerns property 'used for recreational purposes' and the fact that the District cites only cases involving users of public property rather than nonusers like Belton, we conclude section 3-106 is inapplicable. [Citation.] People who are injured within the boundaries of public property due to a condition of the property are not like Belton who was merely driving by the District's Green Lake site on a non-District roadway when the District's tree collapsed onto that adjacent land." (quoting 745 ILCS 10/3-106 (West 2004))).

attached as exhibits to his brief in opposition to defendant's motion to dismiss. However, the parties, the record—and the certified question itself—indicate that the tree was located approximately seven and a half feet from the path, and the photographs clearly show the tree's proximity to the path and that the grass along the path was mown up to a few feet from the tree. Plaintiff's complaint also emphasizes the close proximity of the tree to the path, referring to its location a number of times as being "adjacent to" the path and in "close proximity" to the path. While the tree is certainly located amongst other trees, it can hardly be characterized as being in "its natural, undisturbed vegetative state," as plaintiff claims, especially since it is undisputed that defendant engaged in tree trimming in the area and had, in fact, marked that very tree for future removal. Furthermore, our supreme court has instructed that "it is the character of the property as a whole that determines whether immunity applies." *Sylvester*, 179 Ill. 2d at 509. Thus, plaintiff's focus on the tree itself and the few feet surrounding it is extremely narrow and does not take into consideration the property as a whole. Indeed, plaintiff's interpretation of the "area" at issue is so narrow in scope that it does not even encompass the perimeter of the tree itself—the basis of the entire case is the fact that the tree itself extended over the path, which resulted in the decedent's injury and, ultimately, her death.

¶ 37 On the other hand, we are also not persuaded by defendant's argument that "the District's property when considered as a whole" had a recreational character and, therefore, it was immune. A blanket characterization of *all* of defendant's holdings[8] as recreational would have the effect of swallowing the duty of ordinary care set forth in section 3-102 of the Tort Immunity Act. See *Bubb*, 167 Ill. 2d at 382 ("Section 3-106 provides immunity for recreational property. Providing immunity to any public property where recreation might occur would eviscerate the duty codified in section 3-102."). Thus, while we agree with defendant that we must consider the character of the property as a whole, the "property" we are considering is something more than the single tree at issue but less than the entire forest preserve.

¶ 38 In plaintiff's complaint, he identifies the tree at issue as being located in Erickson Woods, "a forest preserve grove which was located in Cook County between Tower Road on the north, Willow Road on the south and on the east side of the Edens Expressway." Thus, it is reasonable to consider Erikson Woods as the "property" that must be analyzed to determine its character. According to the brochure attached to McCabe's affidavit, Erickson Woods was suitable for the following activities: picnicking, hiking, cycling, inline skating, cross-country skiing, and fishing, and the area was a "birding hotspot." These are quintessentially recreational activities and, accordingly, we agree with defendant that Erickson Woods was intended or permitted to be used for recreational purposes. Consequently, since the character of the property as a whole was recreational, the section 3-106 immunity would apply.

¶ 39 Plaintiff argues that the only recreational property near the tree was the paved trail and that "[a]nything and any property outside of the Paved Trail[ ] is outside of the purview of this immunity." (Emphasis omitted.) Plaintiff further claims that all of the activities described by

---

[8] According to defendant's website, defendant's holdings consist of over 69,000 acres and constitute the largest forest preserve district in the United States. Forest Preserves of Cook County, http://www.fpdcc.com/about/mission-vision/ (last visited Aug. 9, 2016). Additionally, a brochure submitted by defendant as an exhibit to McCabe's affidavit provides that defendant "manages a dynamic number of approximately 68,000 acres of land, 80 percent of which remain in a wild or semi-wild natural state."

defendant occur in areas designated for such activities and that defendant's rules require persons engaged in those activities to stay in such designated areas. However, this does not appear to be entirely accurate. An examination of defendant's rules and regulations, included as an exhibit to plaintiff's brief in opposition to defendant's motion to dismiss and available on defendant's website, indicates that the rules state that, for instance, "[b]icyclists and equestrians must stay on designated trails." See also Forest Preserves of Cook County, http://www.fpdcc.com/conservation/conservation-rules-and-policies/ (last visited Aug. 11, 2016) ("Bicycle and equestrian riders are restricted to designated trails, and motorized vehicles are prohibited."). However, the rules say nothing about requiring hikers or birdwatchers to stay on such trails, in contrast to the rules for areas designated as nature centers. See Forest Preserves of Cook County, http://www.fpdcc.com/preserves-and-trails/rules-and-regulations/ (last visited Aug. 11, 2016) ("For your safety and for the protection of natural areas, please stay on marked trails. Trails are for hiking only; no running, jogging, horses or other sporting activities."). Similarly, there is no restriction on picnicking, other than a prohibition on picnicking "in certain areas, such as Nature Centers" and restrictions on fire and alcohol. Forest Preserves of Cook County, http://www.fpdcc.com/preserves-and-trails/rules-and-regulations/ (last visited Aug. 11, 2016). Indeed, McCabe testified at his deposition that "if you've ever been out in a forest preserve on a weekend, you'll see that they picnic everywhere."[9] Again, plaintiff's view of the recreational property at issue is overly restrictive and does not comport with our supreme court's interpretation of the language. In the case at bar, Erickson Woods was property that was intended or permitted to be used for recreational purposes. Accordingly, we answer the first certified question in the affirmative.

## II. Section 3-107(b)

¶ 41    The second question certified by the trial court asks whether "a tree whose base is located about seven feet from the edge of a forest preserve bicycle path, and that has a limb overhanging the approximate width of the path which breaks off and falls onto a cyclist on the path, constitute a condition of a trail pursuant to Section 3-107(b) of the Tort Immunity Act?"

¶ 42    Under section 3-107 of the Tort Immunity Act, "[n]either a local public entity nor a public employee is liable for an injury caused by a condition of: (a) Any road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas and which is not a (1) city, town or village street, (2) county, state or federal highway or (3) a township or other road district highway. (b) Any hiking, riding, fishing or hunting trail." 745 ILCS 10/3-107 (West 2012). While section 3-106, discussed above, provides immunity only for negligence, "section 3-107(b) extends absolute immunity for both ordinary negligence and willful and wanton negligence for injuries sustained on certain specified types of recreational property." *Goodwin v. Carbondale Park District*, 268 Ill. App. 3d 489, 492-93 (1994). In the case at bar, we must

---

[9]Plaintiff points to language in defendant's municipal code that provides: "No person shall engage in any sport, game, amusement or exercise within the property of the Forest Preserve District except at such places as may be provided and designated for such purposes by the General Superintendent or his designee and in accordance with the rules and regulations prescribed by said General Superintendent or his designee." Forest Preserve District of Cook County Municipal Code § 2-4-3 (adopted July 13, 2011). However, as noted, Erickson Woods was designated in defendant's brochure and website for a wide variety of recreational purposes, and the examples we set forth were not prohibited under defendant's rules and regulations.

determine whether the tree from which the limb that struck the decedent fell was considered a condition of a riding trail such that defendant would be immune from liability under section 3-107(b).

¶ 43      As an initial matter, it is not entirely clear whether plaintiff is challenging the characterization of the path as a "riding trail" for purposes of section 3-107(b). However, we agree with defendant that the path is such a trail. Our courts have looked to the plain and ordinary meaning of a "trail" as a " 'marked path through a forest or mountainous region.' " *Mull v. Kane County Forest Preserve District*, 337 Ill. App. 3d 589, 591-92 (2003) (quoting Webster's Third New International Dictionary 2423 (1993)); see also *McElroy v. Forest Preserve District of Lake County*, 384 Ill. App. 3d 662, 669 (2008) (using same definition); *Brown v. Cook County Forest Preserve*, 284 Ill. App. 3d 1098, 1101 (1996) (same). In applying that definition, courts have found that "trails" for the purposes of section 3-107(b) immunity include a gravel and asphalt path (*Mull*, 337 Ill. App. 3d at 592), a manmade wooden bridge connecting gravel portions of a path (*McElroy*, 384 Ill. App. 3d at 669) and, most relevantly, a paved bicycle path running through forested areas of a forest preserve (*Brown*, 284 Ill. App. 3d at 1101). But see *Goodwin*, 268 Ill. App. 3d at 494 (finding that a "paved bike path in a developed city park" was not a "riding trail"). In the case at bar, plaintiff's complaint alleges that the path ran through Erickson Woods and that "there existed trees, shrubs and other vegetation in close proximity to the edges of the bike path." Furthermore, McCabe's affidavit stated that the path "runs through forested areas, the Skokie Lagoons, and along the North Branch of the Chicago River." Accordingly, we agree with defendant that the path is property characterized as a "riding trail" for purposes of section 3-107(b).

¶ 44      We must next consider whether the tree was considered a "condition of" the path such that defendant is immune from liability for the decedent's death. Our supreme court discussed the meaning of a "condition" of property with respect to section 3-106 in *Moore v. Chicago Park District*, 2012 IL 112788, and we find its analysis instructive here, as both sections of the Tort Immunity Act use the same "condition" language. In *Moore*, the supreme court explained that "the relevant inquiry in determining whether something is a 'condition' within the meaning of section 3-106 is whether a plaintiff's injury was caused by the property itself or by an activity conducted on the property. [Citation.] Put another way, activities conducted on public property 'intended or permitted to be used for recreational purposes' are not considered 'conditions of' the property. [Citation.]" *Moore*, 2012 IL 112788, ¶ 15. Thus, the court stated that it agreed with the courts that had determined that "section 3-106 immunizes a defendant from liability in negligence where the property itself is unsafe, but that section does not immunize the defendant from unsafe activities conducted upon otherwise safe property." *Moore*, 2012 IL 112788, ¶ 15.

¶ 45      Defendant attempts to characterize the instant case as falling within the *Moore* court's analysis, claiming that "[a]pplying the *Moore* Court's 'relevant inquiry' to the instant case, poses the question of whether plaintiff's decedent was injured by the District's property itself, or by the District's activity on the property." This analysis simply assumes that because the decedent was injured by a tree limb striking her, instead of the decedent being injured by defendant's activities, section 3-107 immunity applies. However, the *Moore* court was discussing something that was *on the recreational property itself*, namely, an unnatural accumulation of snow and ice, and determining whether that constituted a "condition" of the property for purposes of section 3-106 immunity. See *Moore*, 2012 IL 112788, ¶ 1 (the

certified question to be considered asked whether " 'an unnatural accumulation of snow and ice' " constituted a condition of public property under section 3-106). Here, by contrast, we are asked to consider whether something that *is not* on the actual path can still be considered a condition of the path for purposes of section 3-107 immunity. Thus, while the *Moore* court's analysis is instructive, it does not provide an exact template that we can simply apply to the situation at hand.

¶ 46    There is no doubt that, had the tree limb in question fallen across the path and the decedent had collided with it at that point, the tree limb would be considered to be a condition of the path and defendant would be immune from liability. This scenario was present in *Goodwin*, where the appellate court found that section 3-106 immunity applied when the plaintiff was injured after the bicycle he was riding collided with a tree that had fallen across a paved bike path.[10] *Goodwin*, 268 Ill. App. 3d at 491. See also *A.D. v. Forest Preserve District*, 313 Ill. App. 3d 919 (2000) (section 3-106 immunity applied with respect to a tree located in a recreational area). Moreover, it comports with the *Moore* court's focus on whether it is the property itself that is unsafe, as opposed to activities conducted upon the property. However, the factual situation in the instant case is slightly different, because the tree limb was above the path until the time that the decedent rode by, at which point it fell to the ground. Thus, we must consider whether the fact that it was not physically on the path affects the analysis of whether it was a condition of the path.[11]

¶ 47    In determining whether the tree from which the tree limb fell was a condition of the path, we must bear in mind that the Tort Immunity Act " 'is in derogation of the common law' and must be strictly construed against the local government entity." *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995) (quoting *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208 (1993)). Furthermore, "[i]n interpreting a provision of the Tort Immunity Act, as with any statute, our primary goal is to ascertain and give effect to the intention of the legislature. [Citation.] We seek that intent first from the plain language used in the statute, and if that language is clear and unambiguous, we are not at liberty to depart from its plain meaning. [Citation.]" *Moore*, 2012 IL 112788, ¶ 9.

¶ 48    In the case at bar, we agree with plaintiff that the trees alongside the path cannot be considered a condition of the path for purposes of section 3-107 immunity. The language is clear that section 3-107(b) immunizes defendant from liability "for an injury caused by a condition of: *** (b) Any hiking, riding, fishing or hunting trail." 745 ILCS 10/3-107(b) (West 2012). The plain language of the statute thus requires the injury to be caused by a condition of a trail, and the only reasonable interpretation of that language is that for there to be immunity, there must be something on the trail itself that caused the injury. Any other result would lead to

---

[10]We note that the *Goodwin* court also found that the bike path was not a "riding trail" for purposes of section 3-107(b) immunity as it was a paved bike path within a developed city park. *Goodwin*, 268 Ill. App. 3d at 493. While this holding has been questioned by other courts (see, *e.g.*, *McElroy*, 384 Ill. App. 3d at 667), its section 3-106 analysis has not and we find it instructive to the instant case.

[11]Defendant cites several cases finding that trees can be considered conditions of property. We have no quarrel with such a statement; however, this misses the point because the cases cited by defendant are cases where the tree at issue was *already on the property* at the time of the injury. See *Goodwin*, 268 Ill. App. 3d at 491 (the plaintiff was injured after the bicycle he was riding collided with a tree that had fallen across a paved bike path); *A.D.*, 313 Ill. App. 3d at 920 (the plaintiff was injured when he ran into a tree while playing "tag" in a recreational part of a forest preserve).

arbitrary line-drawing as to whether a nearby structure or natural feature sufficiently affects the trail so as to be considered a condition of that trail. While defendant attempts to broaden the scope of the path to include trees alongside and overhanging the path, we see nothing in the language of the statute to support such an extension.

¶ 49 Defendant relies on *Brown* to argue that "a condition need not be on a trail in order to be deemed a condition of the trail." In *Brown*, the plaintiff was injured when his bicycle slid out from under him when he descended an incline on a bicycle path and he hit his head on a guardrail that was alongside the path. *Brown*, 284 Ill. App. 3d at 1099. He filed suit against the defendant forest preserve, alleging "that his injuries were caused, in part, by the curvature and slope of the path which the Forest Preserve wilfully and wantonly designed and maintained." *Brown*, 284 Ill. App. 3d at 1099. He also alleged willful and wanton conduct "in the Forest Preserve's placement of the path alongside a steel guardrail which served as a barrier to vehicular traffic using 26th Street." *Brown*, 284 Ill. App. 3d at 1099.

¶ 50 In finding that section 3-107(b) immunity applied, the *Brown* court rejected the plaintiff's argument that "because his injuries were *** caused by the placement of an artificial barrier, in this case a steel guardrail, his claims must *** be permitted to proceed to trial." *Brown*, 284 Ill. App. 3d at 1102. The court found that creating a general exception to tort immunity for all cases involving manmade structures would discourage public entities from undertaking improvements to trails and there was nothing in the Tort Immunity Act that would warrant creating such a broad exception. *Brown*, 284 Ill. App. 3d at 1102. The *Brown* court further noted that the complaint indicated that the guardrail was not on or across the trail itself, distinguishing the facts from the case relied on by the plaintiff, and that the complaint did not allege that the guardrail caused his fall. *Brown*, 284 Ill. App. 3d at 1102.

¶ 51 While defendant places a great deal of reliance on *Brown*, we find it of limited usefulness to the facts present in the instant case. The majority of the *Brown* court's analysis is spent considering the question of whether the path at issue was a "riding trail" under section 3-107. See *Brown*, 284 Ill. App. 3d at 1101. The court's only discussion of whether the guardrail was a "condition" of the trail was its distinguishing the plaintiff's citation of *Sites v. Cook County Forest Preserve District*, 257 Ill. App. 3d 807 (1994), and its rejection of the plaintiff's related argument that, because the guardrail was an artificial barrier, like in *Sites*, his claims should proceed to trial. *Brown*, 284 Ill. App. 3d at 1102. Furthermore, the main reason for rejecting the plaintiff's argument in that case was his focus on the artificiality of the guardrail and the public policy consequences of adopting the plaintiff's argument concerning manmade structures, an issue which is not present in the instant case. See *Brown*, 284 Ill. App. 3d at 1102. There is no discussion in the case concerning whether the fact that the guardrail was next to the path affected the analysis of whether it was a condition of the path.[12] In light of the lack of analysis of the issue present in the instant case, namely, whether an object must be on the property itself to be considered a condition of the property, we do not find *Brown* to provide any insight into our analysis here. We also find it significant that the *Brown* court specifically noted that the

---

[12]In distinguishing *Sites*, the *Brown* court noted that "Brown's complaint indicates that the steel guardrail which he struck was not on or across the trail itself, as was the cable gate at issue in *Sites*." *Brown*, 284 Ill. App. 3d at 1102. However, the *Brown* court does not explain the significance it attaches to this fact, other than as a basis for factually distinguishing *Sites*.

- 14 -

guardrail was not alleged to have caused the plaintiff's fall, whereas in the instant case, the complaint does allege that the falling tree limb caused the decedent's injuries.[13]

¶ 52 We are also unpersuaded by defendant's attempt to argue that a nearby tree can be a condition of a riding trail by taking a "definitional" approach to the issue. Defendant points to the fact that, as we noted above, our courts have often used the dictionary definition of "trail" as a " 'marked path through a forest or mountainous region.' " See, *e.g.*, *Mull*, 337 Ill. App. 3d at 591 (quoting Webster's Third New International Dictionary 2423 (1993)). Defendant continues that "[n]aturally, a 'forest' is comprised of trees. Therefore, on a strictly definitional basis, trees are *** a 'part of' a trail." We do not agree with defendant's expansive interpretation of this language. Under this theory, *all* of the trees in a forest would be "part of" a trail, as would any mountains through which a trail wound. This is certainly not what the legislature intended. Defendant also argues that the word "condition" is defined as " '[t]he state of something, especially with regard to its appearance, quality or working order,' " and includes as synonyms " 'circumstances, surroundings, environment, situation, setup, [and] habitat' " (quoting Oxford Dictionaries, http://www.oxforddictionaries.com/us/ definition/american_english/condition); defendant claims that trailside trees that hang over and have an effect on the trail's use must be part of " 'the state of' " the trail. We do not find this argument persuasive. To the extent that the trees dropped debris onto the trail, that debris would undoubtedly be considered conditions of the trail. However, we cannot find that merely shading the path means that the tree providing the shade becomes part of "the state of" the path.

¶ 53 Finally, defendant cites two out-of-state cases concerning trees falling and injuring people. We are not bound by cases from other jurisdictions (*U.S. Residential Management & Development, LLC v. Head*, 397 Ill. App. 3d 156, 164 (2009)), and we also do not find these cases to support defendant's argument. In *Burnett v. State Department of Natural Resources*, 346 P.3d 1005, 1006 (Colo. 2015), the Supreme Court of Colorado considered whether the state had waived its immunity for injuries sustained by the plaintiff after she was struck by a tree limb while she was camping in a designated campsite in a state park. The court explained that, under Colorado law, governmental entities were generally immunized from tort liability but such immunity was waived under limited circumstances, including in actions "for an injury arising from a 'dangerous condition of any … public facility located in any park' it maintains." *Burnett*, 346 P.3d at 1008 (quoting Colo. Rev. Stat. § 24-10-106(1)(e) (West 2008)). However, it retained immunity for "injuries 'caused by the natural condition of any unimproved property, whether or not such property is located in a park.' " *Burnett*, 346 P.3d at 1008 (quoting Colo. Rev. Stat. § 24-10-106(1)(e) (West 2008)). Thus, the court was asked to consider whether the government was immune where the plaintiff was on a public facility located in a park but was injured by a tree that originated on unimproved property. After examining the legislative history of the statutes, the court found that "the legislature intended to retain immunity for injuries caused by native trees originating on unimproved property regardless of their proximity to a public facility, such as the improved area of the campsite here." *Burnett*, 346 P.3d at 1010.

---

[13]While the *Brown* court states that the plaintiff did not allege that the guardrail caused the plaintiff's *fall*, the case is not entirely clear as to whether that also means that the complaint did not allege that the guardrail caused the plaintiff's *injury*. Since section 3-107 requires the injury to have been caused by a condition of the trail, this is an important distinction.

¶ 54        Similarly, in *Meddock v. County of Yolo*, 162 Cal. Rptr. 3d 796, 797 (Cal. Ct. App. 2013), the California Court of Appeal considered whether the county was immune when a tree fell on the plaintiff while he was in a paved parking lot located in a park owned by the county. Under California law, the county was liable for a "dangerous condition of the parking lot, provided it had notice and time to correct it" (*Meddock*, 162 Cal. Rptr. 3d at 800); however, the county was immune by statute for injuries " 'caused by a natural condition of any unimproved public property.' " (Emphasis omitted.) *Meddock*, 162 Cal. Rptr. 3d at 800 (quoting Cal. Gov't Code § 831.2 (West 2012)). The court found that "although the injury *occurred* on improved property, that is, the paved parking lot, it was *caused* by the trees, native flora located near—and perhaps superjacent to—the improved parking lot, but themselves on unimproved property." (Emphases in original.) *Meddock*, 162 Cal. Rptr. 3d at 800-01. The court accordingly concluded that "[b]ecause Meddock's injuries were *caused by* decaying natural trees located on unimproved property, the County is immune from liability therefor." (Emphasis in original.) *Meddock*, 162 Cal. Rptr. 3d at 805.

¶ 55        Defendant cites *Burnett* and *Meddock* "solely to illustrate that reviewing courts in other jurisdictions have recognized the public policy considerations in favor of immunizing public entities that provide land for recreational use from liability for tree fall accidents occurring on that land" and to argue that the same policy considerations should apply here. We do not find this argument persuasive, because of the differences in the immunity statutes at issue. Both the Colorado and California courts stated that the statutes they were interpreting provided that immunity was the general rule and liability was the exception to that rule. See *Burnett*, 346 P.3d at 1008 ("The [Colorado Governmental Immunity Act (CIGA)] generally immunizes governmental entities and employees from tort liability but waives this immunity under limited circumstances."); *Burnett*, 346 P.3d at 1009 ("[T]he General Assembly enacted the CGIA to reestablish governmental immunity, excepting a finite number of specific circumstances in which public entities waive immunity."); *Meddock*, 162 Cal. Rptr. 3d at 800 (" 'The [Government] Claims Act provides that "[e]xcept as otherwise provided by statute," "[a] public entity is not liable for an injury." [Citation.]' [Citation.]"). By contrast, our Illinois Supreme Court has stated that under the Tort Immunity Act, liability is the general rule and immunity is the exception to the rule. See *Bubb*, 167 Ill. 2d at 377 ("local public entities, in general, have a duty to exercise ordinary care to maintain public property in a reasonably safe condition"); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368-69 (2003) ("Unless an immunity provision applies, municipalities are liable in tort to the same extent as private parties."). Thus, the public policy reasons underlying the other courts' holdings do not necessarily apply equally to the instant case. Our legislature has amended the Tort Immunity Act to expand the scope of immunity when it has determined that it is in the public's best interest to do so. See *Sylvester*, 179 Ill. 2d at 509 (explaining that section 3-106 was amended in 1986 to expand the scope of immunity in order to decrease the costs of liability insurance for local public entities). We leave such a determination to the legislature and will not expand the scope of immunity through judicial action.

¶ 56        Furthermore, both the *Burnett* and *Murdock* courts concluded that a tree that fell onto improved property nevertheless retained its characterization as "natural" property because it originated on the unimproved property. These holdings are directly contrary to defendant's position here, where it is attempting to use these cases to argue that the tree that injured the decedent should be considered part of the path, instead of retaining its natural characterization

as something separate from the path. Accordingly, we find these cases offer no support for defendant's position.

¶ 57                                    CONCLUSION

¶ 58        For the reasons set forth above, we answer the certified questions as follows: (1) the tree from which the limb that struck the decedent fell was located on property intended or permitted to be used for recreational purposes and defendant is therefore immune from liability for negligence pursuant to section 3-106 of the Tort Immunity Act and (2) the tree from which the limb that struck the decedent fell was not a condition of a riding trail for purposes of section 3-107(b) of the Tort Immunity Act and defendant is therefore not immune from liability for the decedent's death under that section.

¶ 59        Certified questions answered.