Filed 9/10/13; pub. order 10/3/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| DWIGHT MEDDOCK et al., | C070262 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVPO10173) |
| v. | |
| COUNTY OF YOLO, | |
| Defendant and Respondent. | |

A Fremont cottonwood tree fell on plaintiff Dwight Meddock while he was in a paved parking lot located in a park along the Sacramento River owned by defendant County of Yolo (County). The trial court granted summary judgment against Meddock and his wife (collectively, Meddock) in their tort suit alleging a dangerous condition of public property, by applying a statutory immunity for injuries "caused by a natural condition of any unimproved public property[.]" (Gov. Code, § 831.2, hereafter § 831.2.) As we will explain, we conclude that Meddock's injuries were "caused by" a "natural condition" of unimproved property where the tree grew, and the fact the tree fell on the improved portion of the public property does not take this case outside the ambit of the immunity.

Accordingly, we shall affirm the judgment in favor of the County.

1

# FACTUAL AND PROCEDURAL BACKGROUND

*The Pleadings*

This case involves the Government Claims Act (Gov. Code, § 810, et seq.; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741-742.)

The operative complaint alleged that on March 21, 2009, Meddock was injured when a tree fell on him while he "was lawfully upon an improved portion" of public property, specifically, "the parking lot of Elkhorn Boat Ramp[.]" He alleged "many of the trees on the premises . . . are leaning away from the river, toward and over the parking lot of the above described premises. Some of these trees are diseased [or] have parasites such as mistletoe, causing them to constitute a dangerous condition of public property. The [accident] occurred as a result of a dead tree, which was visibly dead due to the absence of bark in many places[.]" Meddock alleged that the County failed to maintain the trees properly and failed to warn users of the lot that they were dangerous.

The answer admitted the County owned "Elkhorn Regional Park" and the trees therein, denied the County owned the boat ramp, admitted some of the park's trees "bear mistletoe[,]" but otherwise denied the allegations, and alleged as one affirmative defense the section 831.2 immunity for "natural" conditions.[1]

*The Motion for Summary Judgment*

The County's separate statement of six undisputed facts established that Meddock had been at the park--along the Sacramento River--to "go boating" in recreational use of the park facilities, which included a parking lot, boat ramp, restroom, and picnic area. While Meddock was on the parking lot, one cottonwood tree fell on another, causing tree

_____

[1] Section 831.2 provides in full as follows: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." (§ 831.2; Stats. 1963, ch. 1681, § 1, p. 3273.)

limbs to fall, hurting him. The County argued the natural condition immunity barred the action. The County did not argue it should not have known these trees were in danger of falling.

*The Opposition*

Meddock did not dispute the County's *facts*. Meddock proffered the additional fact that "some of the trees adjacent to the area where" his "truck and boat were parked were leaning over the parking lot" and some of these trees were infested with mistletoe.

*The Hearing, the Trial Court's Ruling, and the Appeal*

At the hearing, Meddock's counsel disclaimed reliance on the theory that the pavement contributed to the injury, for purposes of summary judgment. And Meddock did not argue that the County *poorly* pruned the trees, rather than letting them decay, so as to cause a non-natural danger, or exacerbate a natural danger.[2]

The trial court granted summary judgment, finding that Meddock's injuries were "caused" by the trees on unimproved property. The trial court also made the policy observation that imposing liability might cause the County to close the parking lot, thereby cutting off convenient access to the river or forest areas.

Meddock timely appealed from the ensuing judgment.

## DISCUSSION

### I

*Summary and Standard of Review*

The parties agree on the essential facts, but draw different legal conclusions

_____

[2] These possible theories are not briefed on appeal and therefore we deem them to be abandoned. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, p. 769 (Witkin).)

therefrom.[3] Meddock posits that because he was using *improved* public property for its intended purpose when he was injured thereon, section 831.2 immunity does not apply. The County posits that because the injury was "caused by a natural condition" of *unimproved* public property, the immunity does apply. We agree with the County.

In reviewing a defense summary judgment, we apply the traditional three-step analysis used by the trial court, that is, we: 1) identify the pleaded issues; 2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so; 3) determine if the plaintiff has raised a triable issue of fact.[4] (See *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*); *AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065.)

The County incorrectly asserts that we must construe evidentiary gaps in its favor. The general rule that we must draw reasonable evidentiary inferences in favor of the judgment (see, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) does not apply

_____

[3] Both parties make factual assertions that are not supported by citations or by the summary judgment papers. Although we generally disregard unsupported assertions (see *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856), where the parties agree, we accept their agreed facts as mutual concessions (see *County of El Dorado v. Misura* (1995) 33 Cal.App.4th 73, 77).

[4] Quoting the generality that "doubts" about summary judgment should be resolved against granting it (see, e.g., *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502 (*Hamburg*)) and noting that the tentative ruling was in *his* favor, Meddock asserts the trial court *must have* had doubts, and therefore summary judgment was improper. Meddock cites no authority to support this argument. To agree with his argument would defeat the purpose of tentative rulings, that is, to focus the parties on the dispositive issues before the court (see Younger, Cal. Motions (2011-2012) Tentative Rulings, § 4.53, p. 132) and would preclude us from exercising our independent review to determine whether triable issues of fact exist. (See *Hamburg*, *supra*, 116 Cal.App.4th at pp. 502-503.) Moreover, the theory on which the tentative ruling was based--that the pavement contributed to the accident--has been abandoned by Meddock, as we have explained *ante*.

here.  The burden is on the County, as the movant, to show that Meddock cannot prevail, before any burden shifts to Meddock.[5]  (See *Aguilar, supra*, 25 Cal.4th at pp. 850-851; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334-335 & fn. 7.)

II

*Law and Analysis*

We first consider whether--viewing the facts in the light favorable to Meddock-- the County breached a duty of care to him, then we consider the immunity question.  (See *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 (*Ladd*).)

"The [Government] Claims Act provides that '[e]xcept as otherwise provided by statute,' '[a] public entity is not liable for an injury.'  (Gov. Code, § 815.)"  (*Teter v. City of Newport Beach* (2003) 30 Cal.4th 446, 451 [plaintiff "quite wrong" to assert "liability is the rule and immunity the exception"]; see *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1129 [sovereign immunity waived only where terms of the act "'are satisfied'"].)  Our Supreme Court recently emphasized that "the intent of the Government Claims Act is 'not to expand the rights of plaintiffs against government entities.  Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances.'"  (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991.)[6]

---

[5] Thus that Meddock did not explicitly show the trees that fell were either diseased or superadjacent to the parking lot is immaterial to our consideration of this appeal.

[6] Our Supreme Court has previously characterized the effect of the Government Claims Act as follows:  "In [*Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211], we abrogated the common law rule of governmental immunity, observing that 'when there is negligence, the rule is liability, immunity is the exception.'  (*Id.* at p. 219.)  Our decisions since the adoption of the [Government] Claims Act of 1963 . . . have adhered to this basic axiom of tort law.  Thus, we have pointed out that 'courts should not casually decree governmental immunity . . .' [citation], and that '[u]nless the Legislature has clearly provided for *immunity*, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail.'"  (*Baldwin v. State of California* (1972) 6 Cal.3d 424, 435-436; see *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829, 832, fn. 2 (*Milligan*).)  To the extent that Meddock argues these older cases

Here, the County evidently paved the parking lot and made related improvements to help people launch boats on the Sacramento River. The County thereby assumed liability for a dangerous condition of the parking lot, provided it had notice and time to correct it. (See Gov. Code, §§ 830, subd. (a), 835; *Low v. City of Sacramento* (1970) 7 Cal.App.3d 826 (*Low*).) The facts, viewed in favor of Meddock, show he was using the parking lot in the manner for which it was designed when one or more obviously dangerous trees fell on him. Thus, he established liability, at least provisionally.

We construe statutes "according to the usual, ordinary import of the language employed in framing them." (*In re Alpine* (1928) 203 Cal. 731, 736-737.) An ambiguity arises if and only if two or more plausible and semantically permissible candidates of meaning are advanced. (*City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 793-795.)

The statutory immunity extends to "an injury *caused* by a natural condition of any unimproved public property[.]" (§ 831.2, emphasis added.) The use of the term "caused" is significant. (*Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 927 ["the only inquiry relevant" is whether the injury was "caused by a natural condition"], disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.) Here, although the injury *occurred* on improved property, that is, the paved parking lot, it was *caused* by the trees, native flora[7] located near--and perhaps super-adjacent to--the improved parking lot, but themselves on unimproved property.

compel us to read the immunity statutes narrowly, we disagree. When decisions of our Supreme Court differ on a legal point, we must follow the more recent pronouncement. (See 9 Witkin, *supra*, Appeal, § 541, pp. 611-613.) The more recent Supreme Court cases, cited above, do not support Meddock's view.

[7] The trial court took judicial notice of the fact that Fremont cottonwoods are native to California, that is, they are "indigenous flora" as the County describes them.

In *Ladd*, our Supreme Court construed the phrase "caused by" as set forth in an immunity for any injury "caused by" an escaping prisoner. (Gov. Code, § 845.8, subd. (b)(1).) The court rejected the claim that the immunity extended only to injuries *to others* caused by an escapee: "Section 845.8 uses broad terms to provide immunity for '[a]ny injury caused by' an escaping prisoner. Nothing in the statutory language suggests an exception for injuries caused by a prisoner to herself. No apparent purpose would be served by such an exception." (*Id.* at p. 920.)

Thus, the term "caused by" is to be read in its ordinary sense. Accordingly, the County's interpretation of section 831.2 is manifestly plausible.

In contrast, Meddock posits that the statute applies where the *location* of the injury is improved. He presents a chart listing a number of cases he argues apply the statute to improvements located much farther away from the injured party than in this case, where no distance separated the location of the accident from the improvement. The County responds that, in those cases, the improvements bore no causal connection to the injuries. We agree with the County that the immunity does not turn on location, as Meddock himself elsewhere appears to concede. Proximity may *inform* causation, but is no substitute therefor. "Significance should be given, if possible, 'to every word, phrase, sentence and part of an act.'" (*Mercer v. Perez* (1968) 68 Cal.2d 104, 112.) We cannot plausibly read "caused by" out of the statute, as Meddock impliedly asks us to do.

In another case emphasized by Meddock, one court, quoting Professor Arvo Van Alstyne, the lead drafter of the Government Claims Act, stated "to qualify public property as *improved* so as to take it outside the immunity statute 'some form of physical change in the condition of the property *at the location* of the injury, which justifies the conclusion that the public entity is responsible for reasonable risk management in that area, [is] required to preclude application of the immunity.'" (*Eben v. State of California*

(1982) 130 Cal.App.3d 416, 423.)[8]  Contrary to Meddock's view, this passage does not substitute into the statute a spatial analysis for a causal one, instead, the court was merely rejecting a claim that certain warning buoys, located "some distance" from a waterskiing accident, meant the public property was improved so as to take it outside the natural condition immunity.  Further, "improvement of a portion of a park area does not remove the immunity from the unimproved areas."  (*Rendak v. State of California* (1971) 18 Cal.App.3d 286, 288; see *Bartlett v. State of California* (1988) 199 Cal.App.3d 392, 398 ["Nor does the existence of signs and minimal improvements such as toilets . . . mean that the area is improved public property or that the dunes are not natural conditions"].)  A mountain lion is a natural hazard, even when it attacks someone on improved property.  (See *Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 762-764 (*Arroyo*).)  Thus, the *location of the occurrence* is not material to the statute.

Commenting generally on a proposed immunity for "undeveloped" park and recreation land, Professor Van Alstyne gave the following opinion:

> "The crux of the matter evidently lies in the definition of 'undeveloped.'  What is here intended by that term is those portions of public lands intended for recreational uses which are presently being held in their natural state, without substantial artificial improvements or changes except to the extent that such changes are essential to their presentation and prudent management (such as firetrails and firebreaks, roads for prudent lumbering for conservation purposes, projects for reforestation of burned areas, and the like).  *In short, areas which are 'developed' by cutting of roads and sidewalks*, construction of buildings, *vehicle parking areas,* camping sites with stoves, running water, sanitary facilities, garbage service and organized recreational activities, or which consist of playgrounds, golf courses, picnic tables and other typical recreational facilities

_____

[8]  We have previously relied on Professor Van Alstyne's reports and legislative commentary in interpreting ambiguous provisions of the Government Claims Act.  (See, e.g., *Osgood v. County of Shasta* (1975) 50 Cal.App.3d 586, 589-590 (*Osgood*); *Sanders v. County of Yuba* (1967) 247 Cal.App.2d 748, 752-753; see also *Low*, *supra*, 7 Cal.App.3d at p. 831.)  And our Supreme Court has relied on such materials in interpreting section 831.2 in particular.  (*Milligan*, *supra*, 34 Cal.3d at pp. 831-833.)

8

characteristic of municipal parks, *would be excluded from the scope of this suggested immunity* and presumably would be covered by the [former] Public Liability Act (or its successors). *The distinction between the 'developed' and the 'undeveloped' sectors of a park might well be difficult to identify in terms of boundary lines on a map, and might have to be treated as a question of fact*[.]" (A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) pp. 495-496, emphases added (Study by Prof. Van Alstyne).)

In another comment, Professor Van Alstyne observed as follows:

> "The State . . . owns vast acreages that are unimproved and unoccupied. There should be an absolute immunity from liability for any condition of such property *until it has been improved or occupied*." (A Study Relating to Sovereign Immunity (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 824, emphasis added (Study by Prof. Van Alstyne).)

Although these passages can be read to refer to the location of the injury, rather than its cause, they were general, and do not raise any plausible ambiguity within section 831.2 itself. In contrast, a relevant legislative commentary reads as follows:

> "This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails. [¶] *This section and Section 831.4 continue and extend an existing policy adopted by the Legislature in former Government Code Section 54002*. It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received." (1964 Annual Report (Dec. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 232; Sen. Com. on Judiciary, Rep. on Senate Bill No. 42 (1963 Reg. Sess.) 2 Sen. J. (1963 Reg. Sess.) p. 1891.)

This passage correctly spoke of injuries "resulting from"--meaning "caused by"-- natural conditions of public property. The former statute referenced in this comment

provided immunity for injuries "caused by accidents on bridle trails." (Stats. 1949, ch. 81, § 1, p. 300; see Stats. 1943, ch. 940, § 1, pp. 2812-2813.) The new statute was designed to "'continue *and extend*'" the prior limited immunity, and therefore "the Legislature did not intend a narrow construction of" section 831.2. (*Fuller v. State of California* (1975) 51 Cal.App.3d 926, 938.) Accordingly, Meddock's reliance on the general rule that statutory exceptions are generally construed *narrowly* does not advance his claim of ambiguity in section 831.2 in particular.[9]

We also observe that three cases involving falling trees--including one out-of-state case cited by the County--are wholly consistent with our view.

In *Milligan*, *supra*, 34 Cal.3d 829, our Supreme Court addressed the scope of section 831.2 on the following facts: Eucalyptus trees located on public property fell on Milligan's house. (*Milligan*, *supra,* at p. 831.) *Milligan* held the natural condition immunity did not apply to "nonusers" of government property who are injured "on adjacent property[.]" (*Ibid*.) Although that issue is not presented in this case, in reaching its conclusion, *Milligan* considered the legislative comment we quoted immediately *ante*, and observed:

> "It is desirable to permit public use of governmental property but governmental agencies might prohibit such use if they were put to the expense of making the property safe, responding to tort actions, and paying damages. The comment concludes by pointing out the shortage of funds for improving property for recreational use and the fairness of requiring users to assume the risk of injury. The comment did not state that in the absence of the immunity the costs to public agencies would be prohibitive. The statement as to cost is limited to the

_____

[9] Meddock's discussion of a separate immunity, Government Code section 831.4, which "provides immunity under certain conditions for injuries due to the condition of trails and certain roads providing access to unimproved property" (*Milligan*, *supra*, 34 Cal.3d at p. 833, fn. 3) does not raise any ambiguity in section 831.2.

perception that cost might cause agencies to close their property to the public."
(*Milligan*, *supra*, 34 Cal.3d at p. 833.)[10]

Imposing liability in this case would thwart the policy of reducing the probable cost to a public entity of making improvements to public land, as the trial court observed.

We also find guidance stemming from a case decided *before* the adoption of the Government Claims Act, *Smith v. County of San Mateo* (1943) 62 Cal.App.2d 122 (*Smith*). In *Smith*, a tree fell onto a cabin in a public campground, killing an occupant. Based on evidence that the trees in the area were obviously "dead and partly rotted and were in constant danger of falling[,]" as well as evidence about the particular tree that fell, the County of San Mateo was found liable for failing to maintain the park in a safe condition. (*Smith, supra,* 62 Cal.App.2d at pp. 124-129.) At the time, under the former Public Liability Act, a governmental body was liable for a "defective or dangerous condition" of public property, if it had notice thereof in time to remedy the condition, similar to the present law. (Stats. 1923, ch. 328, § 2, p. 675; see Gov. Code, §§ 830, subd. (a), 835.) But there was no explicit immunity for "natural" conditions, and the court refused to read one into the statute: "While the statute does not evidence an intention on the part of the Legislature to make public corporations liable for all injuries resulting from natural conditions upon the public domain, it seems entirely clear that the Legislature intended to impose liability upon a public corporation which might maintain for an unreasonable time a known dangerous but remediable condition in a park or playground regardless of whether such dangerous condition was attributable to natural or artificial causes." (*Smith*, *supra*, 62 Cal.App.2d at pp. 129-130.) What is noteworthy for

_____

[10] The *Milligan* court added: "In accordance with the purpose expressed in the legislative comment, we conclude that *while the natural condition immunity may be applicable when the decayed tree limb falls on a user of the governmental property*, it is not applicable when the limb injures adjacent property or persons on adjacent property because there is no danger that the governmental agency will close the property to use." (*Milligan*, *supra*, 34 Cal.3d at p. 834, emphasis added.) Here, both the improved parking lot Meddock was using and the unimproved area containing trees were public property.

11

our purposes is that *Smith* was cited by Professor Van Alstyne's report (that lead to the enactment of the Government Claims Act) as an example of *unwarranted* public liability in recreational settings. (See A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) p. 491, fn. 8 (Study by Prof. Van Alstyne).) Thus, the Legislature had decaying trees in mind when it drafted section 831.2.

We also refer to a Pennsylvania case involving a model recreational immunity statute as interpreted to extend only to land that was "largely unimproved[.]" (*Redinger v. Clapper's Tree Serv., Inc.* (1992) 419 Pa. Super 487, 496 [615 A.2d 743, 748].) Although the plaintiff was on "Y.M.C.A.'s land to observe a baseball game, *his injury did not arise out [of] any improvement to the baseball field. [His] injury was caused by a falling, decayed tree limb. Importantly, this limb came from a part of . . . Y.C.M.A.'s land which remained unimproved.*" (*Id.* at p. 501 [615 A.2d at p. 750], emphasis added.) We find this passage reflects an interpretation fully applicable to section 831.2.

Finally, Meddock asserts the County is liable for failing to warn of dangerous trees and creating a "hidden trap" by inducing people to use the lot despite the danger. The "trap" theory is forfeited because it was not raised in the trial court. (See *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873.) In any event, both theories fail to persuade. Meddock points to an observation by our Supreme Court that no provision of the Government Claims Act "explicitly immunizes a public defendant for failure to warn." (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 815 (*Peterson*).) That case involved a parking lot allegedly dangerous due to criminal activity, exacerbated by untrimmed foliage. (*Peterson, supra,* 36 Cal.3d at pp. 805, 812-813.) The passage relied on by Meddock is in a portion of the opinion discussing an immunity for failure to provide police protection. (*Peterson, supra,* at pp. 814-815; see Gov. Code, § 845.) However, "the failure to warn issue involves the same basic policy considerations which led to the enactment of section 831.2. [Citation.] Therefore, liability for failure to warn is inconsonant with the immunity the statute provides. The

immunity applies whether or not the dangerous condition amounted to a hidden trap and whether or not the public entity had knowledge of it." (*Mercer v. State of California* (1987) 197 Cal.App.3d 158, 166; see *Arroyo*, *supra*, 34 Cal.App.4th at pp. 763-764; ["immunity applies whether or not the dangerous condition amounted to a hidden trap and whether or not the public entity had knowledge of it"]; *McCauley v. City of San Diego* (1987) 190 Cal.App.3d 981, 991-992.)

Because Meddock's injuries were *caused by* decaying natural trees located on unimproved property, the County is immune from liability therefor. (§ 831.2.)

## DISPOSITION

The judgment is affirmed. The Meddocks shall pay the County's costs of this appeal. (See Cal. Rules of Court, rule 8.278.)


       DUARTE       , J.


We concur:


       BUTZ       , Acting P. J.


       MURRAY       , J.

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| DWIGHT MEDDOCK et al., | C070262 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVPO10173) |
| v. | |
| COUNTY OF YOLO, | ORDER OF PUBLICATION |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Yolo County, Daniel P. Maguire, Judge.  Affirmed.

Dreyer Babich Buccola Wood Campora, LLP, Jason Jerard Sigel and James Jeffrey Ison, for Plaintiffs and Appellants.

Angelo, Kilday & Kilduff, LLP, Bruce A. Kilday and John A. Whitesides, for Defendant and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on September 10, 2013, was not certified for publication in the Official Reports.  For good cause it now appears the

opinion should be published in the Official Reports, and it is so ordered.


BUTZ,       Acting P.J.


MURRAY,   J.


DUARTE,   J.

2