Filed 3/26/25  P. v. Inman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>SHELDON LYNN INMAN,<br><br>　　　　Defendant and Appellant. | C100105<br><br>(Super. Ct. No. CRF05-0000177) |

In 2005, a jury found defendant Sheldon Lynn Inman guilty of 11 offenses and found true seven sentence enhancement allegations based on his use of a firearm to commit the offenses.  The trial court sentenced Inman to an aggregate term of 54 years in prison, including a one-year sentence enhancement for having served a prior prison term.  After the Legislature declared the prior prison term enhancement legally invalid (Stats. 2019, ch. 590, § 1; Stats. 2021, ch. 728, § 3), the trial court resentenced Inman pursuant

1

to Penal Code section 1172.75,[1] striking the prison enhancement but otherwise imposing the same sentence, for a total of 53 years in prison.

Inman appeals from the judgment after resentencing, arguing the trial court "failed to consider or afford any weight to evidence of [his] mental health issues and/or childhood tra[u]ma as mitigating factors" under section 1385, subdivision (c) and section 1170, subdivision (b)(6). In response, the People argue that Inman failed to establish that childhood trauma or mental illness contributed to the commission of these offenses and the trial court did not abuse its discretion under these statutes. We agree with the People and will affirm the judgment. We will also direct the trial court to prepare a corrected abstract of judgment that reflects the resentencing hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

In the underlying offense, Inman pulled his car onto the road and began driving erratically in front of two vehicles containing four members of a family, including a two-year-old boy. Inman pulled to the side of the road and let the two vehicles pass, then began tailgating the rear vehicle. The family then pulled over to let Inman pass them. Inman eventually sped away out of sight. (*People v. Inman* (Aug. 20, 2007, C051199) [nonpub. opn.] (*Inman*).)

The family later came upon Inman's car partially on the wrong side of the road with a cloud of dust around it, so they slowed down, thinking an accident occurred and Inman might need assistance. As the family got closer and the dust cleared, they saw Inman pointing a gun at them over the hood of his car and they tried to speed away. As each of the family's vehicles passed Inman, he fired the gun at them. (*Inman*, *supra*, C051199.)

---

[1]     Undesignated statutory references are to the Penal Code.

2

A sheriff's deputy responded to the incident, saw Inman's car, and began following Inman. When the deputy turned on his overhead lights, Inman sped up and began driving erratically, swerving into oncoming traffic. When the deputy's car got close, Inman pointed the shotgun out his window and fired, striking the deputy's windshield. Another deputy joined the pursuit, and they followed Inman for 30 to 40 minutes, with Inman continuing to swerve into oncoming traffic. Eventually, Inman crashed into a snowbank and ran off into the woods, carrying a shotgun. One deputy fired his gun at Inman several times but missed. Deputies called for Inman to come out with his hands up, and a few minutes later he surrendered. While Inman was being arrested, he said to the officers, " 'You won't believe the kind of day I've had.' " (*Inman*, *supra*, C051199.) The deputies searched the woods and found the loaded shotgun with two rounds of ammunition in the magazine, a pouch attached to the stock of the gun with five more rounds, and two loose rounds. While Inman was being transported to the hospital for a blood draw, he said, " 'It was fun while it lasted.' " (*Inman*, *supra*, C051199.)

A jury found Inman guilty of assault on a police officer with a firearm, discharging a firearm at an occupied motor vehicle, evading a police officer with wanton disregard for the safety of others, four counts of assault with a deadly weapon, two counts of negligent discharge of a firearm, and one count each of possessing a firearm and ammunition, having previously been convicted of a felony. The jury also found true allegations that Inman had used and personally and intentionally discharged a firearm in the commission of the assault on the police officer and had used a firearm in the commission of five other offenses. Inman waived his right to a jury trial on allegations that he had been convicted of a serious felony and had served a prior prison term, and the court found the allegations true.

When talking to the probation officer prior to sentencing, Inman "stated all the things happened because of drugs" and reported using " 'quite a bit' " of

3

methamphetamine the night he committed the offenses. Inman also told the probation officer that he had been molested as a child, his father had not been around, and he had ended up living in group homes. The probation officer's report stated that Inman had "never been examined or treated for any mental or emotional problems." The trial court sentenced Inman to an aggregate term of 54 years in prison, including a one-year sentence enhancement, pursuant to former section 667.5, subdivision (b), for having served a prior prison term.

After the Legislature declared the prior prison term enhancement legally invalid, the Department of Corrections and Rehabilitation (CDCR) identified Inman as a person who qualified for resentencing under section 1172.75 and the trial court scheduled a resentencing hearing.[2] Inman then filed a brief arguing the trial court should, in addition to dismissing the prior prison term enhancement, dismiss the prior serious felony allegation and "most or all of the other imposed enhancements." Specifically, Inman argued that five mitigating factors listed in section 1385, subdivision (c)(2) applied: (1) the People alleged multiple enhancements, (2) the application of an enhancement could result in a sentence of over 20 years, (3) the current offense is connected to mental illness, (4) the current offense is connected to prior victimization or childhood trauma, and (5) two enhancements were based on a prior conviction over five years old.

---

[2] The record lacks any list from CDCR identifying Inman as a person eligible for resentencing, pursuant to section 1172.75, subdivision (b). In his sentencing brief filed in the trial court, Inman attested that CDCR sent a list including him to the trial court. The People accept this fact in the respondent's brief. We may accept facts stated in a party's briefs as admissions, and the parties are bound by the recitation of facts in their own briefs. (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1152; *Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 725, fn. 2.) If parties agree as to the facts, we accept their agreed facts as mutual concessions. (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 3.) We also presume CDCR performed its statutory duty by the July 1, 2022, deadline specified in section 1172.75, subdivision (b). (Evid. Code, § 664.)

Inman's briefing claimed that he suffered from depression, posttraumatic stress disorder, bipolar disorder, schizophrenia, and anxiety, and he cited a series of prison records from 2008 to 2010 indicating he had a condition that made him eligible for "inclusion in the Mental Health Services Delivery System." Inman also gave more details about his childhood circumstances and offered to testify to these facts at the resentencing hearing. Inman argued his childhood trauma was a contributing factor in the commission of the offense, and he urged the trial court to impose a lower term sentence for assault on a police officer with a firearm, pursuant to section 1170, subdivision (b)(6).

The People filed a brief arguing the trial court should not reduce Inman's sentence other than by striking the legally invalid one-year prior prison term enhancement. The People detailed Inman's extensive criminal history, attaching a certified copy of records showing convictions for robbery, transportation or sale of controlled substances, escaping from jail with force or violence, and a number of other drug offenses prior to the offenses in this case. The records also showed that Inman had committed two offenses in prison, possession of a weapon in 2013 and assault by means of force likely to produce great bodily injury in 2023.

The People argued that the trial court could consider this criminal history, based on the certified copies, as an aggravating circumstance justifying an upper term sentence for assault on a police officer with a firearm. The People also argued the court should not dismiss any enhancements or the prior serious felony conviction because reducing Inman's sentence would " 'pose a likelihood that defendant will commit a crime that results in physical injury or serious harm to others.' " Specifically, the People contended that Inman "already had a history of violence and weapon use," then committed the violent offenses in this case with a shotgun, and then demonstrated "his continuing proclivity for weapons and violence in prison."

At the hearing, neither party introduced additional evidence. Inman made a statement apologizing for his actions and asking the trial court to reduce his sentence.

The trial court dismissed the legally invalid prior prison term enhancement, but otherwise declined Inman's requests. The court explained that it had considered Inman's brief, the People's brief, and all the attached evidence, and Inman's counsel confirmed that the court had not missed anything. The court declined to strike the prior serious felony conviction allegation, explaining that Inman had a consistent criminal history since that prior conviction, which the court recounted in detail. The court also noted that Inman's criminal history continued even while Inman was incarcerated, commenting that in light of such, "[t]here is no reason to believe that . . . he has rehabilitated himself since the [prior serious felony conviction]." The court then went on to recount the details of the crime for which Inman was seeking resentencing, calling it a "horrific crime." The court also considered as aggravating factors the five prior prison terms he had served and his poor performance on parole and probation. Finally, the court explained that it would not exercise its discretion to strike the five-year enhancement, stating "I don't think that reducing Mr. Inman's sentence by any amount would be beneficial to the public. I think it would be very detrimental to public safety, to reduce Mr. Inman's sentence by any amount of time."

Accordingly, the trial court imposed an aggregate term of 53 years in prison, which included the upper term sentence of eight years in prison for assault on a police officer with a firearm, doubled to 16 years due to the prior serious felony conviction, plus a 20-year firearm enhancement under section 12022.53, subdivision (c).

Inman filed a timely notice of appeal following the resentencing hearing.

## DISCUSSION

Inman contends the trial court "failed to consider or afford any weight to evidence of [his] mental health issues and/or childhood tra[u]ma as mitigating factors" when it declined to dismiss any enhancements under section 1385, subdivision (c) and when it declined to impose a lower term sentence for assault on a police officer with a firearm,

6

pursuant to section 1170, subdivision (b)(6).  We conclude the trial court did not abuse its discretion under either statute.

When resentencing pursuant to section 1172.75, the trial court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (§ 1172.75, subd. (d)(2).)  This means the current versions of section 1385, subdivision (c) and section 1170, subdivision (b)(6) applied at the resentencing hearing.  Section 1172.75 also permits resentencing courts to consider evidence of intervening events since a defendant's original sentencing hearing:  "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (§ 1172.75, subd. (d)(3).)

# I

## *Standard of Review*

We review discretionary sentencing decisions for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  This means we will affirm as long as the court exercised its sentencing discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' "  (*Ibid.*)  " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' "  (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377; accord, *People v. Gutierrez* (2009)

7

174 Cal.App.4th 515, 527 ["in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, [the reviewing court] cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of [its] discretion"]; see also Cal. Rules of Court, rule 4.409 [all relevant sentencing factors "will be deemed to have been considered unless the record affirmatively reflects otherwise"].)  The trial court's " ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Carmony*, at p. 377.)  In other words, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

## II

### *Enhancements*

Section 1385 provides, as relevant here:  "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).)  When considering dismissing an enhancement, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of [certain enumerated] mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

As an initial matter, Inman treats the operation of the finding that he was convicted of a serious felony within the meaning of section 667, subdivisions (b) through (i) and section 1170.12—commonly known as a "strike" conviction—as a sentence enhancement within the meaning of section 1385, subdivision (c).  This court has already

8

rejected the application of section 1385, subdivision (c) to strike findings in *People v. Burke* (2023) 89 Cal.App.5th 237, 242-244, but we need not rely on that precedent here. Even treating the strike finding as a sentence enhancement, we conclude that the trial court complied with section 1385, subdivision (c) when it declined to dismiss any enhancements.

Inman asserts the court "failed to consider or afford any weight, let alone great weight, to the mitigating factors offered." We reject both parts of this contention. First, contrary to Inman's assertion, the trial court did consider these mitigating factors. As the court explained at the beginning of the hearing, it "reviewed [Inman]'s motion, all 94 pages." The court then confirmed with Inman's counsel to ensure it had not missed anything Inman submitted. The court did not discuss giving great weight to the mitigating factors Inman offered from section 1385, subdivision (c), but the court was not required to do so because it found that dismissing even the least consequential enhancement would endanger public safety.

Inman contends the trial court failed to consider that he "would be about 79 years old at the time of his projected release" and "a 79-year-old is statistically significantly less dangerous than a 62-year-old." This argument fails for two reasons. First, Inman failed to introduce any evidence in the trial court to show that he would be less dangerous at any future time. Second, the court found that the assault Inman committed against another prisoner only one year before the resentencing hearing showed that "he is a danger to society and continues to be at age 61." Given this evidence and Inman's history of committing crimes of violence, we cannot say the court abused its discretion by finding that Inman would endanger society even at a more advanced age.

### III

*Lower Term Sentence*

As relevant here, section 1170, subdivision (b)(6) creates a presumption that the court should impose a lower term sentence if "[t]he [defendant] has experienced

9

psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." This presumption may be overcome if the court "finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) "As made plain by the statutory text, the mere fact a defendant is young or has suffered past trauma is insufficient—either or both must be 'a contributing factor in the commission of the offense' for the low term presumption to apply." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)

While Inman's petition described abuse he suffered as a child and included prison records indicating that he had a qualifying mental disorder that made him eligible for inclusion in the Mental Health Services Delivery System, neither the records nor Inman identified what that mental health disorder was. Even if we were to assume that Inman suffered abuse as a child and suffers from a mental health disorder, he was still required to prove that those conditions were a contributing factor in the commission of the offense. (§ 1170, subd. (b)(6).) Mental illness alone is insufficient: "Psychological trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)." (*People v. Banner* (2022) 77 Cal.App.5th 226, 241.) While Inman described traumatic events from his childhood to the probation officer, he did not indicate, nor suggest that these contributed to the commission of assault on a police officer with a firearm, saying instead that "all the things happened because of drugs" and that he had used " 'quite a bit' " of methamphetamine the night he committed the offenses. Drug use alone is not necessarily "psychological trauma." (*Banner*, at p. 241.) The probation officer's report additionally noted that Inman had "never been examined or treated for any mental or emotional problems," and Inman offered no new psychological evidence at the resentencing hearing.

Here, though the trial court did not explicitly discuss Inman's childhood trauma, Inman fails to " ' "clearly show that the sentencing decision was irrational or

10

arbitrary." ' " (*People v. Carmony*, *supra*, 33 Cal.4th at p. 376.)

While the court indicated it had considered the mitigating factors offered by Inman, it also properly considered the nature and circumstances of the current convictions, which involved violent and dangerous conduct, and Inman's history of criminality, including that he has continued to commit new crimes while in prison. The court concluded that Inman has not rehabilitated and continues to pose a danger to the public. These circumstances supported imposition of the 53-year sentence, and we find no abuse of discretion in the trial court's sentencing decision.

## IV

### *Abstract of Judgment and Custody Credits*

In our review of the record, we have identified errors in the new abstract of judgment that must be corrected. First, the abstract of judgment should indicate the date of the resentencing hearing, both at the top of the first page and in section No. 13, and the box in section No. 12(e) should be checked to indicate that the trial court executed the new sentence at the resentencing hearing. Second, on count two, the trial court imposed, but stayed the middle term of two years on the section 12022.5, subdivision (a) enhancement, yet the abstract of judgment does not reflect such. The new abstract of judgment should include the stayed section 12022.5 enhancement attached to count two. Finally, the trial court reflected additional custody credits in section No. 11, but one date is incorrect. The additional credits were earned beginning on October 25, 2005, not October 25, 2002. However, the update in credits needed to be reflected in section No. 13, not section No. 11 and the corrected abstract of judgment should reflect such.

11

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment as specified above and to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


            /s/
            EARL, P. J.


We concur:


     /s/
DUARTE, J.


     /s/
RENNER, J.